## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

BILLY DOTSON,

     Plaintiff,

     v.

TALLGRASS ENERGY, LP, WILLIAM R. MOLER,
MARCELINO OREJA ARBURUA, GUY G. BUCKLEY,
ROY N. COOK, THOMAS A. GERKE, WALLACE C. HENDERSON,
MATTHEW J.K. RUNKLE, and TERRANCE D. TOWNER,

     Defendants.

---

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

---

Plaintiff Billy Dotson ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Tallgrass Energy, LP ("Tallgrass" or the "Company") and members of Tallgrass Energy GP, LLC's ("TGE GP") Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Tallgrass by Prairie Private Acquiror LP ("Buyer") and Prairie Merger Sub LLC ("Buyer Sub"), a wholly owned subsidiary of Buyer.

1

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company conducts business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Tallgrass' Class A shares.

7.      Defendant Tallgrass, through its subsidiaries, provides crude oil transportation services to customers in Wyoming, Colorado, Kansas, and the surrounding regions of the United States. The Company is incorporated in Delaware. The Company owns two office buildings in Lakewood, Colorado and maintains operations in Colorado. The Company's Class A shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol, "TGE."

8.      Defendant William R. Moler ("Moler") is TGE GP's Chief Executive Officer and a director.

9.      Defendant Marcelino Oreja Arburua ("Arburua") serves on the Board as a director. Defendant Arburua is Chief Executive Officer of Enagás.

10.     Defendant Guy G. Buckley ("Buckley") serves on the Board as a director. Defendant Buckley is a senior advisor to Blackstone Infrastructure Partners ("Blackstone").

11.     Defendant Roy N. Cook ("Cook") serves on the Board as a director.

12.     Defendant Thomas A. Gerke ("Gerke") serves on the Board as a director.

13.     Defendant Wallace C. Henderson ("Henderson") serves on the Board as a director. Defendant Henderson is a Senior Managing Director at Blackstone.

14.     Defendant Matthew J.K. Runkle ("Runkle") serves on the Board as a director. Defendant Runkle is a Managing Director at Blackstone.

15.     Defendant Terrance D. Towner ("Towner") serves on the Board as a director.

16.     Defendants Moler, Arburua, Buckley, Cook, Gerke, Henderson, Runkle, and Towner are collectively referred to herein as the "Individual Defendants."

17.     Defendants Tallgrass and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

18.     Blackstone was established in 2017 and purportedly targets a diversified mix of investments across the energy infrastructure, transportation, water and waste and communications sectors, with a primary focus in North America.

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

19.     On December 17, 2019, Tallgrass issued a press release announcing that it had entered into a definitive merger agreement pursuant to which affiliates of Blackstone together with

affiliates of Enagas, GIC, NPS and USS would acquire all of the publicly-held outstanding Class A Shares of Tallgrass for $22.45 in cash per Class A Share. The press release states, in pertinent part:

### Tallgrass Energy Announces Agreement for the Purchase of its Publicly-Held Class A Shares by Blackstone Infrastructure Partners

December 17, 2019 12:58 AM Eastern Standard Time

LEAWOOD, Kan.--(BUSINESS WIRE)--Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.

The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.

The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.

The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt.

Citigroup Global Markets Inc. and Credit Suisse Securities (USA) LLC served as financial advisors and Vinson & Elkins L.L.P. acted as legal advisor to Blackstone Infrastructure Partners. Latham & Watkins LLP acted as legal advisor to Enagas. Sidley Austin LLP acted as legal advisor to GIC.

Evercore Group LLC served as the financial advisor and Bracewell LLP acted as legal advisor to the Conflicts Committee of the Board of Directors of TGE's General Partner.

Baker Botts L.L.P. acted as legal advisor to TGE.

**About Tallgrass Energy**

Tallgrass Energy, LP (NYSE: TGE) is a growth-oriented midstream energy infrastructure company operating across 11 states with transportation, storage, terminal, water, gathering and processing assets that serve some of the nation's most prolific crude oil and natural gas basins.

To learn more, please visit our website at www.tallgrassenergy.com.

**About Blackstone**

is one of the world's leading investment firms. We seek to create positive economic impact and long-term value for our investors, the companies we invest in, and the communities in which we work. We do this by using extraordinary people and flexible capital to help companies solve problems. Our asset management businesses, with $554 billion in assets under management, include investment vehicles focused on private equity, real estate, public debt and equity, growth equity, opportunistic, non-investment grade credit, real assets and secondary funds, all on a global basis. Further information is available at www.blackstone.com. Follow Blackstone on Twitter @Blackstone.

Infrastructure is one of Blackstone's most active investment areas. Over the last 15 years, we have invested in more than $45 billion of infrastructure-related projects globally. Blackstone's approach to infrastructure investing is one that puts a focus on responsible stewardship and community engagement. In areas such as clean power, energy transmission, communications technology, and many others, we have helped move forward sustainable projects that drive local economic growth and job creation, and enhance quality of life. In doing so, we work closely with civic stakeholders to help make sure that critical infrastructure is developed in a responsible manner that is responsive to community needs.

**About Enagas**

Enagás is a leading international energy company with 50 years' experience. It is one of the companies with the most LNG terminals in the world. It has a presence in Spain, the USA, Mexico, Chile, Peru and Greece. It is also one of the shareholders in the Trans Adriatic Pipeline (TAP), which will connect Greece, Albania and Italy to bring natural gas from the Caspian Sea to Europe. The company is certified as a Transmission System Operator (TSO) by the European Union and is an international benchmark in the development and operation of gas networks. It owns more than 12,000 km of gas pipelines, three strategic storages and nine regasification plants. In Spain, Enagás is the Technical Manager of the Gas System and has developed the country's key gas infrastructures, making it a model within Europe.

Listed on the IBEX 35 Spanish stock market, Enagás has also been present in the main sustainability indexes such as the Dow Jones Sustainability Index (DJSI), for eleven consecutive years. The company is the world leader of its sector, according to the latest DJSI revision.

Enagás is also committed to the fight against climate change through initiatives to promote the use of renewable gases, such as biomethane and hydrogen, and through the development of actions for energy efficiency and sustainable mobility. For more information about Enagás: www.enagas.es

Twitter: @enagas

**About GIC**

GIC is a leading global investment firm established in 1981 to manage Singapore's foreign reserves. As a disciplined long-term value investor, GIC is uniquely positioned for investments across a wide range of asset classes, including equities, fixed income, private equity, real estate and infrastructure. In infrastructure, GIC's primary strategy is to invest directly in operating assets with a high degree of cash flow visibility and which provide a hedge against inflation. GIC has investments in over 40 countries. Headquartered in Singapore, GIC employs over 1,500 people across 10 offices in key financial cities worldwide. For more information on GIC, please visit www.gic.com.sg or LinkedIn.

**About NPS**

NPS is a public pension fund in South Korea with assets under management of KRW 714.3 trillion ($620 billion) as at September 30, 2019. Established in 1988, the purpose of the fund is to maximize investment return while maintaining long-term fiscal stability to stabilize and promote public livelihood and welfare in the Korea. With a distinct risk-return profile from traditional asset classes, alternative investments portfolio of NPS has contributed to generating sustainable returns for the total portfolio. NPS is headquartered in Korea and has 3 overseas offices in New York, London, and Singapore. For more information about NPS, please visit fund.nps.or.kr.

**About USS**

USSL is the corporate trustee of one of the largest private sector pension funds in the UK with assets under management of £68 billion as at 31 March 2019 and over 400,000 members across more than 350 universities and other higher education and associated institutions in the UK.

USSL, through its investment manager, USSIM, is a long-term owner of assets with a track record of investing in infrastructure and infrastructure-like businesses.

6

20.     On February 11, 2020, Defendants filed with the SEC a Schedule 14A Preliminary Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Proxy Statement, which recommends that Tallgrass shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; and (ii) the financial analyses performed by the Conflicts Committee's[1] financial advisor, Evercore Group L.L.C. ("Evercore"), in connection with its fairness opinion.

22.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Conflicts Committee's Recommendation; (ii) Opinion of Evercore—Financial Advisor to the Conflicts Committee; and (iii) Certain Financial Projections.

23.     Plaintiff may seek to enjoin the anticipated shareholder vote on the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. Unless remedied, Tallgrass shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the

---

[1] The "Conflicts Committee" is comprised of Defendants Cook, Gerke, and Towner and had "the full power, authority and responsibilities of the TGE GP Board, on behalf of TGE GP, TGE and the TGE Unaffiliated Shareholders, to (v) review, evaluate and negotiate the Potential Transaction, (w) determine whether or not to grant "Special Approval" (pursuant to Section 7.9 of the Partnership Agreement), (x) determine whether or not to approve the Potential Transaction, including the authority to reject the Potential Transaction, and on such terms and conditions as may ultimately be negotiated, (y) make a recommendation to the TGE Unaffiliated Shareholders as to what action, if any, should be taken by the TGE Unaffiliated Shareholders with respect to the Potential Transaction, and (z) retain its own professional advisors in connection with its review of the Potential Transaction." *See* Proxy Statement at 24.

Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' misconduct.

**1.   Material Omissions Concerning Tallgrass' Financial Projections**

24.   The Proxy Statement omits material information concerning Tallgrass' financial projections.

25.   The Proxy Statement provides that, "in connection with the evaluation of a potential transaction, management of TGE provided multi-year projections to Evercore and the Conflicts Committee in connection with their consideration of the Transactions."

26.   The Proxy Statement provides a "table set[ting] forth a summary of certain projected financial information for TGE for 2020 through 2023 prepared by management and which is referred to as the 'Management Case[.]'"

27.   The Proxy Statement provides a "table set[ting] forth a summary of certain projected financial information for TGE constituting the Historical Growth Capital Expenditure Case, which is identical to the Management Case other than the adjustment . . . to reflect $350 million in annual growth capital expenditures[.]"

28.   Moreover, with respect to Evercore's fairness opinion, the Proxy Statement provides that Evercore "performed a discounted cash flow analysis for TGE based on forecasts and other data provided by management of TGE[.]" Evercore's "*Corporate-Level—Discounted Cash Flow Analysis*" states that "Evercore performed a discounted cash flow analysis of TGE by valuing ***the after-tax cash flows to be received by TGE based on the Historical Growth Capital Expenditure Case.***" (emphasis added).

29.   The Proxy Statement, however, fails to disclose the following concerning the Management Case and Historical Growth Capital Expenditure Case projections: (1) the after-tax cash flows to be received by Tallgrass, and all underlying line items; (2) all line items used to

calculate (i) Adjusted EBITDA, and (ii) Cash Available for Dividends; and (3) a reconciliation of all non-GAAP to GAAP metrics.

30.    When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[2]

31.    The disclosure of Tallgrass' projected financial information is material because it would provide Tallgrass shareholders with a basis to project Tallgrass' future financial performance and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Tallgrass and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 26, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

32.      Accordingly, in order to cure the materially misleading nature of the Management Case and Historical Growth Capital Expenditure Case projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

33.      The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tallgrass shareholders.

### 2.      Material Omissions Concerning Evercore's Financial Analyses

34.      In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Evercore.

35.      The Proxy Statement fails to disclose the following concerning Evercore's "*Corporate-Level—Discounted Cash Flow Analysis*": (1) the after-tax cash flows to be received by Tallgrass based on the Historical Growth Capital Expenditure Case, and all underlying line items; (2) the individual inputs and assumptions underlying the (i) range of after-tax discount rates of 6.5% to 7.5%, (ii) range of EBITDA exit multiples of 9.0x to 11.0x, and (iii) range of perpetuity growth rates of 0.25% to 0.75%; (2) the terminal values Evercore derived; (3) the Company's debt and cash projected as of January 1, 2020; and (4) the number of Class A shares projected to be outstanding as of January 1, 2020.

36.      The Proxy Statement fails to disclose the following concerning Evercore's "*Corporate-Level—Discounted Dividend Analysis*": (1) the individual inputs and assumptions underlying the (i) terminal yield range of 8.0% to 12.0%, and (ii) cost of equity range of 7.5% to 8.5%, and of 11.0% to 13.0%; and (2) the terminal value.

37.      The Proxy Statement fails to disclose the individual multiples and financial metrics

of each of the entities utilized by Evercore in its "*Corporate-Level—Peer Group Trading Analysis*" and "*Sum of the Parts—Peer Group Trading Analysis*[.]"

38.     The Proxy Statement fails to disclose the following concerning Evercore's "*Sum of the Parts—Precedent M&A Transaction Analysis*": (1) the objective criteria Evercore relied upon in selecting the transactions; and (2) the individual premiums paid in each of the transactions.

39.     The Proxy Statement fails to disclose the following concerning Evercore's "*Sum of the Parts—Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying Evercore's selection of ranges of discount rates, EBITDA exit multiples, and perpetuity growth rates for each segment; and (2) the terminal values.

40.     The valuation methods, underlying assumptions, and key inputs used by Evercore in rendering its purported fairness opinion must be fairly disclosed to Tallgrass shareholders. The description of Evercore's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Tallgrass shareholders are unable to fully understand Evercore's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Tallgrass shareholders.

## COUNT I
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
Against All Defendants**

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above,

which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

43.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

44.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

45.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

46.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

### COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of certain Individual Defendants to approve the Proposed Transaction. Thus, those Individual Defendants were directly involved in the making of the Proxy Statement.

51.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they

reviewed and considered—descriptions which had input from the Individual Defendants.

52.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.    Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: February 26, 2020                                 Respectfully submitted,

                                                        **HALPER SADEH LLP**

                                                        /s/ Daniel Sadeh
                                                        Daniel Sadeh, Esq.
                                                        375 Park Avenue, Suite 2607
                                                        New York, NY 10152
                                                        Telephone: (212) 763-0060
                                                        Facsimile: (646) 776-2600
                                                        Email: sadeh@halpersadeh.com

                                                        *Counsel for Plaintiff*